UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
JAN 15 2008

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DAN NELSON AUTOMOTIVE GROUP, INC., a South Dakota corporation d/b/a JD BYRIDER SALES, DAN NELSON FINANCE SUPER CENTER, DAN NELSON MAZDA, and DAN NELSON SUZUKI; SOUTH DAKOTA ACCEPTANCE CORPORATION, a South Dakota corporation d/b/a CNAC; DANIEL A. NELSON; and CHRISTIAN J. TAPKEN, <br>        Plaintiffs, <br> -vs- <br> UNIVERSAL UNDERWRITERS GROUP, a Kansas corporation, <br>        Defendant. | CIV 05-4044 <br><br> MEMORANDUM OPINION AND ORDER RE: MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs brought this declaratory judgment action in State Circuit Court seeking a declaration that Defendant, Universal Underwriters Group[1] (Universal) has a duty to defend Plaintiffs and that insurance coverage exists under the Universal Policy for action taken by the Iowa Attorney General in the form of Civil Investigative Demands and a Petition alleging violations by Plaintiffs of the Iowa Consumer Fraud Act, the Iowa Consumer Credit Code and the Ongoing Criminal Conduct Statute. The action was removed to this Court. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Now pending before this Court is Universal's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)) (Doc. 31) and Plaintiffs' Motion for Summary Judgment (Doc. 34).

---

[1] The action originally named Allied Insurance as a Defendant. Allied Insurance was dismissed as a nominal party and AMCO Insurance Company was substituted in its place. Doc. 6. The action was then dismissed as against AMCO Insurance Company pursuant to a stipulation. Doc. 15.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dan Nelson Automotive Group, Inc., (hereafter Dan Nelson) a South Dakota corporation, is an automobile dealership that sells and trades motor vehicles to customers. Its principal place of business is in South Dakota but it owns dealerships in South Dakota and Iowa. Plaintiff South Dakota Acceptance Corporation, a South Dakota corporation with its principal place of business in South Dakota, makes consumer loans to individuals so they can purchase automobiles. South Dakota Acceptance Corporation does business in Iowa as Car Now Acceptance Company(hereafter CNAC). Plaintiffs Daniel A. Nelson and Christian J. Tapken, both South Dakota residents, were the officers and owners of Dan Nelson, and South Dakota Acceptance Corporation (hereafter SDAC). In June of 2005, Nelson sold his interest in the company to Tapken, who then became the sole owner and President of SDAC.

Defendant Universal Underwriters Group (hereafter Universal) is a Kansas corporation that issued a multiple coverage insurance policy to Plaintiffs for the policy period of January 1, 2004, through January 1, 2005. The Universal policy includes Garage Coverage Part 500, General Liability Coverage Part 950, Personal Umbrella Coverage Part 970 and Umbrella Coverage Part 980, which provisions are the subject of this declaratory judgment action.

On September 23, 2004, the Iowa Attorney General served documents entitled "Civil Investigative Demand and Notice of Intent to Proceed" (CIDs) on Dan Nelson and CNAC. The CIDs, which were issued pursuant to the Iowa Consumer Fraud Act, Iowa Code § 714.16, and the Iowa Consumer Credit Code, chapter 537, stated that there was evidence that the business practices that Dan Nelson and CNAC had engaged in, were engaging in, or were about to engage in, may be in violation of the Iowa Consumer Fraud Act, and the Iowa Consumer Credit Code. The CIDs made requests for numerous pieces of information and documents. Each Notice of Intent to Proceed stated that the failure to comply with this Civil Investigative Demand would result in a suit being filed against Dan Nelson, Inc, and CNAC for violations of provisions of the Iowa Consumer Credit Code. On October 12, 2004, both Dan Nelson, Inc. and CNAC tendered the defense of the CIDs to Universal. On December 3, 2004, Universal declined coverage of the CIDs and refused to defend against them. On January 7, 2005, the Attorney General of Iowa, on behalf of consumers, filed a Petition with the Polk County, Iowa, District Court. The Petition named as Defendants Dan Nelson,

Inc., CNAC, and Dan Nelson and Christian Tapken, in their individual and corporate capacities.[2] The Petition alleged violations of Iowa Consumer Fraud Act, the Iowa Consumer Credit Code, and the Ongoing Criminal Conduct statue, Iowa Code ch. 706A. On January 10, 2005, Dan Nelson, and CNAC sent the Petition to Universal, tendered defense of the Petition, and requested reconsideration of the denial of the defense of the CIDs. On February 2, 2005, Universal denied coverage of the Petition and refused to defend against it.

Plaintiffs filed their declaratory judgment action in Circuit Court in Minnehaha County on February 24, 2005. The action was then removed to this Court. The Complaint seeks this Court's declaration that coverage exists for both the CIDs and the Attorney General's petition under Garage Coverage Part 500, General Liabililty Coverage Part 950, Personal Umbrella Coverage 970 and/or Umbrella Coverage Part 980 of the Universal Policy. At the motions hearing counsel for Plaintiffs advised that Plaintiffs conceded that public policy considerations preclude coverage for the claims and causes of action under the Iowa Consumer Fraud Act and the Ongoing Criminal Conduct statute, and that with regard to the statutory schemes in issue, Plaintiffs were only seeking coverage for the claims and causes of action under the Iowa Consumer Credit Code.

Subsequent to the motions hearing counsel sent the Court a letter advising that consent judgments had been entered int the Iowa District Court for Polk County regarding the Attorney General's Petition. Counsel also enclosed the consent judgments regarding CNAC, Daniel A. Nelson, in his corporate and individual capacities, and Dan Nelson Automotive Group, Inc. The letter and enclosures have been made a part of the record. Doc. 47.

Plaintiffs had entered into a Loan Agreement with MetaBank and as security for the multiple loans granted MetaBank a security interest in their assets, including the consumer retail installment contracts. In August of 2005, the Attorney General of Iowa entered into an Agreement with MetaBank that all consumers with active automobile loans have their interest rates reduced to 18%, that all loans be deemed current and all late fees and past due interest be waived, that the last $500 in principal loan balance be waived, that a limited $500 warranty be provided for automobile repairs, and that the deficiency balances for certain consumers with charged-off loans were forgiven.

---

[2]The Petition also named Victory Properties, LLC, which was used as a land holding company, as a Defendant.

3

Substantially similar agreements were made with multiple finance companies which had purchased loans on automobiles sold by Dan Nelson and financed by CNAC.

Because the State of Iowa had achieved through its agreements what it deems to be reasonable relief, the State of Iowa did not seek further restitution or civil penalty as part of the Consent Judgments, but rather, received injunctive relief prohibiting plaintiffs from engaging in any business activity relating to the sale of new or used automobiles and an agreement requiring CNAC to release liens on certain automobiles when requested to do so by the Attorney General. In return, the Consent Judgments fully resolved the claims filed against CNAC, Daniel A. Nelson, and Dan Nelson Automotive Group, Inc. in the Attorney General's Petition.

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Principles Regarding Motion for Judgment to Dimiss

To survive a a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). If matters outside the pleadings are presented to and considered by the Court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c). Since the parties have presented and the Court has considered matters outside the pleadings, the motion to dismiss will be treated as a motion for summary judgment.

## DISCUSSION

The Duty to Defend

Since state law controls the construction of insurance policies when a district court is exercising diversity jurisdiction, South Dakota law will govern this coverage dispute. *See Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 455 (8th Cir.1998). The rights and obligations of parties to an insurance contract are determined by the language of the insurance contract which "must be construed according to the plain meaning of its terms." *Biegler v. American Fam. Mut. Ins. Co.,* 621 N.W.2d 592, 599 (S.D. 2001). Under South Dakota law, the insurer's duty to defend and the insurer's duty to indemnify are severable and independent duties. The duty of an insurer to defend an insured is much broader than its duty to indemnify. *Allied Mut. Ins. Co. v. Dakota Rose, Inc.,* 43 F. Supp. 2d 1081, 1084 (D.S.D. 1999); *Hawkeye-Security Ins. Co. v. Clifford,* 366 N.W.2d 489, 490 (S.D. 1985). An insurer's duty to defend is generally determined by the allegations of the complaint or petition in the action which has been brought against the insured. *United States Fidelity and Guaranty Co. v. Louis A. Roser Co., Inc.,* 585 F.2d 932, 936 (8th Cir. 1978). Under South Dakota law, an insurer must defend "if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage." *Hawkeye-Security Ins. Co. v. Clifford,* 366 N.W.2d 489, 491 (S.D. 1985). In order to avoid a duty to defend, the insurer must show that the claim clearly falls outside the policy coverage. *Crum & Forster Ins. Co. v. Pacific Employers Ins. Co.,* 907 F. Supp. 312, 313-14 (D.S.D. 1995). If just one claim falls within the policy coverage, the insurer must defend "even though the pleadings are ambiguous or

reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless, or even fraudulent." *Hawkeye-Security*, 366 N.W.2d at 491-92.

In addition to the pleadings, a court determining the scope of the claims against an insured may also consider "where appropriate, other evidence of record." *Dakota Rose*, 43 F. Supp. 2d at 1084 (quoting *North Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992)). In *Hawkeye-Security Ins. Co. v. Clifford*, 366 N.W.2d 489 (S.D. 1985), the South Dakota Supreme Court explained that whenever it arguably appears from the pleadings that a claim against the insured is covered by the insurance policy, "[t]he review ends, even though the pleadings are ambiguous." 366 N.W.2d at 491. However, the South Dakota Supreme in *Hawkeye-Security* went on to state that a court should reach a decision on the scope of the claims against an insured after considering, "when appropriate, other record evidence."*Id.* at 492.

## WHETHER A CIVIL INVESTIGATIVE DEMAND IS A CLAIM FOR DAMAGES OR A SUIT UNDER THE INSURANCE POLICY?

If and when it appears to the Attorney General of Iowa that a person has or is about to engage in a consumer fraud or when the Attorney General believes that an investigation is in the public interest, the Attorney General may seek information in a number of different ways. Iowa Code § 714.16.3. One of the ways is through a Civil Investigative Demand (CID), under Iowa Code section 714.16.3. a . *See State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 594 (Iowa 2004).

Plaintiffs contend they are entitled to coverage under the Unicover Garage Part 500 section of Univeral's policy. Garage operations refers to where the insureds conduct their auto business and other operations necessary or incidental thereto. Universal contends that the plain meaning of its policy excludes any coverage pertaining to the Iowa Attorney General's CIDs because the CIDs are not suits for damages.

The Unicover Garage Part 500 section of Univeral's policy provides that Universal "will pay all sums the INSURED legally must pay as DAMAGES ... because of STATUTE AND TITLE E&O when such insurance is included in the declarations. STATUTE AND TITLE E&O is defined as:

> [A]ny claim or SUIT filed against YOU, other than as a result of an OCCURRENCE or CUSTOMER COMPLAINT DEFENSE, by or on behalf of:

6

> (a) a customer arising out of GARAGE OPERATIONS, because of an alleged violation during the Coverage Part period, of any federal, state or local:
>
> (1) odometer law;
> (2) truth-in-lending or truth-in-leasing law;
> (3) auto damage disclosure law;
> ... .

The petition alleges that Plaintiffs' print and radio advertisements offer "0% financing for five years on every used vehicle in stock, when in reality the majority of customers are charged 24.95% interest." The petition also alleges that Plaintiffs falsely advise consumers that they have poor credit and would be unable to receive credit at another dealership, and that such practice steers the consumers into extremely high interest loans when they actually qualify for lower cost loans. The petition further alleges that employees of Dan Nelson Automotive and CNAC have entered into unconscionable consumer credit transactions by selling vehicle to individuals when the Dan Nelson Automotive and CNAC employees knew or should have known there was no reasonable probability of payment in full by the consumer in violation of the Iowa Consumer Credit Code. *See* Iowa Code § 537.5108(1) and (4)(a). The petition further alleges that Plaintiffs violated provisions of the Iowa Debt Collection Practices Act, Iowa Code § 537.7101 *et seq.*, which is a subdivision of the Iowa Consumer Credit Code.

Plaintiffs contend that although the term "claim," which is used in STATUTE AND TITLE E&O section is not defined in the Universal policy it is sufficiently broad to encompass the CIDs as claims of an alleged violation of Iowa's truth-in-lending law so as to be covered under the STATUTE AND TITLE E&O of the Universal policy. The Eight Circuit Court of Appeal's decision in *Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461 (8th Cir. 1990), supports Plaintiffs' position.

In *Polychron v. Crum & Forster Ins. Cos.*, *Id.*, a former bank president was questioned by an Assistant United States Attorney and two Internal Revenue Service agents after a federal grand jury had subpoenaed records from the bank for the period in which the former bank president had served as president. The former bank president was eventually indicted for violations of the federal Currency and Foreign Transactions Reporting Act. The former bank president was an insured under the bank's officers' and directors' liability insurance policy which provided defense coverage of any

7

claim or claims against an insured for a wrongful act. The policy did not define "claim."

The district court in *Polychron* defined "claim" as a cause of action and concluded that although a grand jury indictment constituted a claim, a grand-jury subpoena and investigation did not constitute a claim. In reversing the district court, the Eighth Circuit Court of Appeals reasoned that although the district court had not erred in relying on *Black's Law Dictionary*, the district court had improperly focused on "cause of action" as the definition of "claim." *Black's Law Dictionary* (5th ed. 1979), defined "claim" as: "[t]o demand as one's own or as one's right; to assert; to urge; to insist. Cause of action." The Eighth Circuit Court of Appeals explained that the term "claim" has a broader definition than that given it by the district court and that the definition encompassed the grand-jury investigation of the former bank president. The Eight Circuit further explained:

> The function of a subpoena is to command a party to produce certain documents and therefore constitutes a "claim" against a party. The subpoena, it is true, was directed to the bank, but the documents demanded (not merely requested, as defendants would have it) related to the plaintiff's conduct as a bank official. Further, the grand jury's investigation and the questioning by the Assistant United States Attorney amounted, as a practical matter, to an allegation of wrongdoing against [the former bank president], for which he prudently hired an attorney.

*Polychron v. Crum & Forster Ins. Companies,* 916 F.2d at 463.[3]

In this case, the CIDs functioned to command the Plaintiffs to produce documents and provide information relevant to the alleged violations of statutes, and therefore constitute a claim or claims against the insured within the meaning of the STATUTE AND TITLE E&O portion of the Unicover Garage Part 500 section of Universal's policy. Absent an applicable exclusion, Universal has a duty to defend Plaintiffs in connection with the CIDs under the STATUTE AND TITLE E&O section of its policy.[4]

---

[3]This holding is comparable to holdings that investigations by the Justice Department and Securities and Exchange Commission constitute claims under an insurance policy. *See Richardson Electronic, Ltd. v. Federal Ins. Co.,* 120 F. Supp.2d 698 (N.D. Ill. 2000) (Justice Department investigation); *Minuteman Int'l, Inc. v. Great American Ins. Co.,* 2004 WL 603482 (N.D.Ill. March 22, 2004)(Securities and Exchange Commission investigation).

[4]Universal contends that the decision in *Polychron v. Crum & Forster Ins. Cos.* is inapplicable because in that case the insurance policy specifically covered "wrongful acts." While the Court agrees that *Polychron v. Crum & Forster Ins. Cos.* may not be controlling on

## WHETHER THE ATTORNEY GENERAL'S PETITION IS AN EQUITABLE ACTION WHICH IS NOT COVERED BY UNIVERSAL'S POLICY?

Coverage other than Statute and Title E&O

The Unicover Garage Part 500 section of Univeral's policy states, "WE will pay all sums the INSURED legally must pay as DAMAGES ... ." The Unicover Garage Part 500 further states, "WE have the right and duty to defend any SUIT asking for these DAMAGES." In the definitions section of Unicover Garage Part 500, damages are defined as follows: "'DAMAGES' means amounts awardable by a court of law. ... DAMAGES does not mean civil penalties, fines or assessments." "SUIT" is defined as follows: "a civil action for DAMAGES including arbitration or mediation to which the INSURED must submit or submits with OUR consent. A class action is one SUIT. SUIT does not mean administrative actions ... or equitable actions." This definition of suit is also contained in the General Liability Unicover Coverage Part 950 of the policy.

Plaintiffs contend that Unicover Garage Part 500 section promises coverage for Group 3 injuries,[5] specifically, abuse of process. Plaintiffs contend that the Petition's allegation that Dan Nelson, Inc., violated the Iowa Consumer Credit Code by bringing collection suits against its customers in a county of improper venue states a cause of action for abuse of process. Plaintiffs also maintain that the Petition's allegation that CNAC employees engaged in harassing debt collection techniques intended to embarrass the consumer, including communicating details of the debt to employers and family members, is encompassed within Group 3 injuries under the policy. Plaintiffs further maintain that since the Attorney General is seeking judgment against Plaintiffs "for all amounts of money that individual consumers have a right to recover" the Petition constitutes a suit for legal damages, as opposed to an action seeking equitable relief. Universal contends that the relief requested in the Attorney General's Petition is purely equitable in nature and therefore not covered under the Unicover Garage Part 500 section of Universal's policy.

---

the ultimate issue of coverage, the Court believes it is controlling authority on the more narrow issue of whether the CIDs constitute claims.

[5]Group 3 injuries include "false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, abuse of process, libel, slander, defamation of character, private nuisance (except pollution), invasion of rights of privacy or possession of personal property."

9

The Petition in this case bears a case number of "Equity No. CE50210." The Request for Relief in the Attorney General's Petition is over three pages long and requests injunctive relief, judgment against Defendants for amounts necessary to restore to the consumers all money acquired by conduct that violates the Consumer Fraud Act, "complete disgorgement of all ill-gotten gain traceable to the unlawful practices," civil penalties, and reformation or rescission of existing contracts with consumers. For the alleged violations of the Ongoing Criminal Conduct provisions, the prayer for relief requests that the court order the Defendants to divest themselves of any interest in the enterprise or real property, impose restrictions on future activities, order dissolution or reorganization of the enterprise, order forfeiture of property, order suspension or revocation of licensing and order revocation of any certificate to conduct business in Iowa.

The Petition's request for relief as it relates to the Iowa Consumer Fraud Act is based on Iowa Code § 714.16(7) which provides that a "civil action pursuant to this section shall be by equitable proceedings."[6] The request for relief as it relates to the Iowa Consumer Credit Code is based on Iowa Code § 537.6110 which is entitled "Injunctions and other proceedings in equity."

---

[6]Iowa Code § 714.16(7) provides in part:
A civil action pursuant to this section shall be by equitable proceedings. If it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in a practice declared to be unlawful by this section, the attorney general may seek and obtain in an action in a district court a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the person from continuing the practice or engaging in the practice or doing an act in furtherance of the practice. The court may make orders or judgments as necessary to prevent the use or employment by a person of any prohibited practices, or which are necessary to restore to any person in interest any moneys or property, real or personal, which have been acquired by means of a practice declared to be unlawful by this section, including the appointment of a receiver in cases of substantial and willful violation of this section. If a person has acquired moneys or property by any means declared to be unlawful by this section and if the cost of administering reimbursement outweighs the benefit to consumers or consumers entitled to the reimbursement cannot be located through reasonable efforts, the court may order disgorgement of moneys or property acquired by the person by awarding the moneys or property to the state to be used by the attorney general for the administration and implementation of this section. ... .
In addition to the remedies otherwise provided for in this subsection, the attorney general may request and the court may impose a civil penalty not to exceed forty thousand dollars per violation against a person found by the court to have engaged in a method, act, or practice declared unlawful under this section ... .

In *O'Neill Investigations, Inc. v. Illinois Emp. Ins. of Wausau,* 636 P.2d 1170 (Alaska, 1981), the attorney general for Alaska issued a complaint against the insured, a debt collection agency, alleging numerous violations of the Consumer Protection Act and seeking injunctive relief, civil penalties, and an order "for restoration to individuals of monies or property acquired by defendants as the result of conduct" of the Insured which was set forth in the attorney general's complaint. The attorney general's complaint in the *O'Neill Investigations* case alleged that the insured engaged in a course of unfair and deceptive trade practices designed to collect payment from its debtors. When the Insurer brought a declaratory judgment regarding its duty to defend, the Insurer argued that it had no duty under the policy to defend the Insured against the state's suit since the complaint did not allege a "negligent act, error, or omission" or "seek damages," as required for the policy to apply. The Insured did not argue that the policy covered claims for injunctive relief or civil penalties, but contended that the state's prayer for restoration of monies to injured individuals brought the action within the coverage of the policy. 636 P.2d at 1174.

In rejecting the Insured's argument, the Supreme Court of Alaska in *O'Neill Investigation* relied upon *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 504 P.2d 1139, 1140 (1973). In the *Seaboard* case the Supreme Court of Washington concluded that its attorney general's complaint for injunctive relief, civil penalties and "such additional orders or judgments as may be necessary to restore to any person in interest any monies or property" acquired by violations of the Consumer Protection Act, was not a suit "seeking damages" within the coverage of the policy in the declaratory judgment action before the court. Both the Supreme Court of Alaska and the Supreme Court of Washington distinguished claims in which individual consumers alleged misconduct on the part of the insured and an attorney general's action under a consumer protection act. The distinction is explained as follows:

> "The Attorney General's responsibility in bringing cases of this kind is to protect the public from the kinds of business practices which are prohibited by the statute; it is not to seek redress for private individuals. Where relief is provided for private individuals by way of restitution, it is only incidental to and in aid of the relief asked on behalf of the public."

*O'Neill*, 636 P.2d at 1176 (*quoting Seaboard Surety Co. v. Ralph Williams' Northwest Chrysler*

11

*Plymouth, Inc.*, 504 P.2d at 1143); *See also City of Ft. Pierre*, 463 N.W.2d 845, 848 (S.D. 1990)(civil penalties prayed for by federal government for intentionally violating Clean Water Act were punitive in nature and did not constitute a suit for damages requiring insurer to defend).

This Court likewise concludes that there is a significant distinction between actions brought by individual consumers and an attorney general's petition alleging violations by Plaintiffs of the Iowa Consumer Fraud Act and the Ongoing Criminal Conduct. The Court is not persuaded that characterizing the allegations concerning the Iowa Consumer Fraud Act and the Ongoing Criminal Conduct as Group 3 injuries changes the availability of coverage in this matter. The policy still requires a civil suit for damages for coverage of Group 3 injuries and for customer complaint defense.[7] Accordingly, this Court rejects Plaintiffs' contention that the potential of a money judgment in the form of restitution or disgorgement would bring this equitable action within the policy's definition of "suit."

Statute and Title E&O

As was discussed in the preceding section regarding defense coverage for the CIDs, the STATUTE AND TITLE E&O section of the policy covers a claim or suit. Claim is undefined in the policy, is not restricted to a civil suit for damages, and has no exclusion within its definition for equitable actions. Further, although coverage for Group 3 injuries is excluded for cases where the "first injurious offense was committed prior to the Coverage part period," coverage is extended under the policy to apply to suits or claims for statute and title E&O filed during the Coverage Part period which arise from acts which took place prior to that period. The CIDs in this case were served on September 23, 2004, during the coverage period.

The STATUTE AND TITLE E&O applies to claims on behalf of a customer arising out of truth-in-lending or truth-in-leasing law. The Iowa Consumer Credit Code governs all consumer transactions in Iowa and was enacted to "broadly []protect consumers in relatively small credit

---

[7]The policy defines CUSTOMER COMPLAINT DEFENSE as
> any SUIT filed against YOU during the Coverage Part period or on behalf of a customer arising out of the sale, lease, rental, service or repair of YOUR PRODUCT, other than as a direct result of an OCCURRENCE or as defined in STATUTE AND TITLE E&O.

12

transactions." *Equilease Corp. v. Smith*, 405 N.W.2d 803, 805 (Iowa 1987), *quoted in Hogue v. Palisades Collection, LLC*, 494 F.Supp.2d 1043 (S.D. Iowa 2007).The Iowa Consumer Credit Code is to be liberally construed, and one of its purposes is to conform the regulation of disclosure in consumer credit transactions to the Truth in Lending Act. Iowa Code. § 537.1102. The STATUTE AND TITLE E&O section of the policy applies to allegations in the CIDs and Petition.

Universal's policy contains a number of exclusions which Universal contends preclude coverage in this case.[8] Relevant to the Statute and Title E&O section are Exclusion (a), which excludes coverage for customer complaint defense or STATUTE AND TITLE E&O "if caused by any dishonest, fraudulent or criminal acts committed by any insured," and Exclusion (b) excludes coverage for "any act committed by or at the direction of the INSURED with intent to cause harm." When an insurance company relies on a contract exclusion to foreclose coverage, the insurance company has the burden of proving that the exclusion applies. *Auto Owners Ins. Co. v. Enterprise Rent-A-Car Co.-Midwest*, 663 N.W.2d 208 (S.D.2003).

A similar defense for dishonest, fraudulent or criminal acts was presented in *Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc.*, 905 S.W.2D 529 (Mo. 1995). In that case the insured was sued by customers for allegedly selling wrecked automobiles to buyers and representing the automobiles as undamaged vehicles. The customers sued for negligence, breach of warranty, fraud and violation of Missouri merchandising laws. The insurer in the *Dean Johnson Ford* case, like the insurer in the case at hand, contended that the exclusion for dishonest, fraudulent,

---

[8] In addition to Exclusions (a) and (b), Exclusion (d) excludes coverage for "liability assumed under any contract or agreement." Exclusion (e) excludes coverage for "any claim made or SUIT arising out of any manufacturer's warranty, extended warranty, extended service agreement, or mechanical breakdown agreement." Exclusion (k) excludes coverage for "loss of use of property not physically damaged, if caused by [Insured's] delay or failure in performing any agreement or contract [or] the failure of [Insured's product or work] to meet the quality warranted or the level of performance represented." Exclusion (m) applies to injury as defined in Groups 3 and 4. Group 3 includes coverage for abuse of process and malicious prosecution, causes of action which Plaintiffs contend are applicable in the case at hand. The exclusion in (m) excludes coverage if the "first injurious offense was committed prior to the Coverage part period." The policy period in the case at hand runs from January 1, 2004, through January 1, 2005.Although many of the allegations in the Petition are not date specific the debt collection violation claims regarding improper venue and contact requirements are alleged to have occurred since at least March 15, 1999.

intentional or criminal acts precluded coverage for defense cost. 905 S.W.2d at 534. In rejecting the Insurer's argument, the Missouri Court of Appeals noted that the policy provided that it would defend claims alleging violation of odometer laws, truth-in-lending, truth-in-leasing laws, and similar provisions, and to interpret the exclusion as the Insurer requested would exclude the very coverage for which the Insured had paid premiums. *Id.* The Missouri Court of Appeals held that a more reasonable interpretation, which would give effect to both the "dishonest, fraudulent, intentions or criminal act" exclusion and the provision for defense costs, would be to simply exclude coverage for damages actually awarded against the insured for acts proved to be intentionally dishonest or fraudulent. This Court finds the logic of the Missouri Court of Appeals to be persuasive and in this case concludes that under its policy Universal is obligated to provide payment of up to the $25,000 listed in the Declarations for The STATUTE AND TITLE E&O defense costs.

## WHETHER UMBRELLA COVERAGE PART 980 OR PERSONAL UMBRELLA COVERAGE PART 970 IS AVAILABLE TO PLAINTIFFS?

Plaintiffs assert in their Complaint that there may be umbrella coverage available for the claims made by the Iowa Attorney General. The terms of Umbrella Coverage Part 980 and Personal Umbrella Coverage Part 970 provide that umbrella coverage is only available if the same is provided in underlying insurance, in any other insurance, or if its retention is shown in the declarations. The only available underlying insurance is the STATUTE AND TITLE E&O, and no other insurance has been presented to the Court. However, the declarations do not support a finding of umbrella coverage in this case and Exclusion (S) of Umbrella Coverage Part 980 expressly excludes "EMPLOYMENT RELATED DEFENSE, STATUTE AND TITLE E&O or CUSTOMER COMPLAINT DEFENSE." The Court concludes that there is no umbrella coverage available in this matter. Accordingly,

IT IS ORDERED:

1. That Plaintiffs' Motion for Summary Judgment (Doc. 34) is granted to the extent that Plaintiffs are entitled to declaratory relief as set forth in this Memorandum Opinion concerning STATUTE AND TITLE E&O defense insurance coverage but is otherwise denied; and

2. That Defendant's Motion to Dismiss (Doc. 31), which has been converted to a motion for summary judgment is denied to the extent that Plaintiffs are entitled to declaratory relief as set forth in this Memorandum Opinion concerning STATUTE AND TITLE E&O defense insurance coverage, but the motion is otherwise granted.

Dated this 15th day of January, 2008.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Sally Margulies
   DEPUTY

15